## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ZEO HEALTH LTD., | § | |
| MICAH PORTNEY, | § | |
| TOUCHSTONE LIFE ESSENTIALS, | § | |
| INC., and NORWOOD E. STONE, | § | Case No. 2:21-cv-11410 (ES)(MF) |
| | § | |
| Plaintiffs, | § | JURY TRIAL DEMANDED |
| | § | |
| vs. | § | |
| | § | |
| ZOI GLOBAL, LLC, | § | |
| LORI R. LEE, DENISE STEPHENS, | § | |
| METRON NUTRACEUTICALS, | § | |
| LLC, and NIKOLAOS | § | |
| TSIRIKOS-KARAPANOS, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS DEFENDANTS METRON NUTRACEUTICALS, LLC AND NIKOLAOS TSIRIKOS-KARAPANOS

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................................i

TABLE OF AUTHORITIES ..........................................................................ii

I.      PRELIMINARY STATEMENT....................................................................1

II.     STATEMENT OF FACTS .........................................................................1

III.    LEGAL STANDARD ................................................................................5

IV.     ARGUMENT ..............................................................................................8

    A. Defendants' comments on the Zoi Global website are sufficiently targeted to New Jersey to satisfy the *Zippo* test. .....................................................8

    B. This Court may exercise personal jurisdiction over the Metron Defendants because the Amended Complaint alleges sufficient facts to satisfy the U.S. Supreme Court's *Calder* effects test...........................20

V.      CONCLUSION .........................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) ..................................6–8, 18

*Calder v. Jones*, 465 U.S. 783 (1984) ....................................................................20

*Carpino v. Nat'l Store Fixtures Inc.*, 712 N.Y.S. 2d 684 (N.Y. App. Div. 2000)...12

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42
    (1st Cir. 2002) ..........................................................................................10

*First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902 (N.D. Ill. 2006)....10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)...............7

*Gorman v. Jacobs*, 597 F. Supp. 2d 541 (E.D. Pa. 2009) ..................................9–12

*Hanson v. Denckla*, 357 U.S. 235 (1958)..................................................................6

*Hardy v. Pioneer Parachute Co.*, 531 F.2d 193 (4th Cir. 1976)............................10

*Holbrook Plastic Pipe Supply, Inc. v. Jackson*, No. 04-CV-03211-ADS-WDW,
    2006 WL 8441408 (E.D.N.Y. Jan. 3, 2006)................................10, 12–14

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ..................................21–22

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3rd Cir. 1998) ..........................6, 20

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 693
    F. Supp. 2d 409 (D. Del. 2010)..................................................................10

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..................................................6

*Marten v. Godwin,* 499 F.3d 290 (3d Cir. 2007)......................................................6

*MaxLite, Inc. v. ATG Elecs., Inc.,* 193 F. Supp. 3d 371 (D.N.J. 2016).....6, 8, 21–22

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007)..................7–8, 18

*Ross v. UKI Ltd.*, No. 02 CIV. 9297, 2004 WL 384885 (S.D.N.Y. Mar. 1, 2004).10

*Shaffer v. Heitner*, 433 U.S. 186 (1977)....................................................8

*State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 786 (N.J. App. Div. 2006)..........................................21, 23

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003)............................9

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147 (3d Cir. 1996)...................................................................................6

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)........................7

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) 8–9, 22

**Statutes**

R. 4:4–4. .........................................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(2) ..........................................................................1

## I.    PRELIMINARY STATEMENT

Plaintiffs Zeo Health Ltd. ("Zeo Health"), Micah Portney, Touchstone Life Essentials, Inc. ("Touchstone"), and Norwood E. Stone (collectively, "Plaintiffs") respectfully submit opposition to Defendants Metron Nutraceuticals, LLC ("Metron") and Dr. Nikolaos Tsirikos-Karapanos (collectively, the "Metron Defendants")'s Brief in Support of Motion to Dismiss (Dkt. #13, "Motion to Dismiss") pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs' Amended Complaint (Dkt. #5) alleges sufficient facts for this Court to exercise personal jurisdiction over the Metron Defendants. The Metron Defendants are subject to the Court's jurisdiction because they have ample contacts with the state of New Jersey and targeted the state with their statements. The Metron Defendants profit from using their New Jersey contacts as vehicles to promote and to distribute their products. Further, the Metron Defendants have not met their burden of establishing jurisdiction is not constitutional in New Jersey and presenting a compelling case that other considerations would render jurisdiction unreasonable. Accordingly, Plaintiffs request that the Court deny the Metron Defendants' motion.

## II.    STATEMENT OF FACTS

Plaintiffs brought this action for "false and misleading advertising under the Lanham Act § 34(A) (15 U.S.C. § 1125(a)) and for defamation, product

1

disparagement, and unfair competition in violation of New Jersey law."[1] Dkt. #5, ¶ 1. As alleged in the Amended Complaint, the Metron Defendants' actions give rise to the present causes of action.

Metron Nutraceuticals, LLC is an Ohio company whose business involves the research, development, and manufacture of dietary supplements, including Defendant Zoi Global, LLC ("Zoi Global")'s ClearDrops and ClearSleep, oral zeolite supplements and the only products sold by Zoi Global. Dkt. #5, ¶ 11; Ex. A at 10. Dr. Nikolaos Tsirikos-Karapanos is the owner, founder, president, and managing member of Metron and the inventor of ClearDrops and ClearSleep. Dkt. #5, ¶ 12. Plaintiffs have alleged that Dr. Tsirikos-Karapanos and Metron are one and the same. Dkt. #5, ¶ 13.

The Zoi Global website and social media accounts prominently feature Dr. Tsirikos-Karapanos while referring to him as "Our Inventor" and to his three U.S. patents as "Our Patents." Dkt. #5, ¶ 13; Ex. A at 8–9, 11. As their exclusive distributor, Zoi Global sells and promotes the Metron Defendants' zeolite products, including ClearDrops, across the United States, including within New Jersey. Dkt. #5, ¶ 14; Ex. A at 8–9. Zoi Global does not sell or promote any other company's

---

[1] Plaintiffs' causes of action are: (1) False Advertising under the Lanham Act, (2) defamation of Zeo Health, (3) defamation of Micah Portney, (4) defamation of Touchstone, (5) defamation of Eddie Stone, (6) product disparagement, and (7) unfair competition.

products. Ex. A at 10. In fact, it was Dr. Tsirikos-Karapanos who asked Defendant Denise Stephens, one of the founders and CEO of Zoi Global, to create a multi-level marketing company. Ex. A at 10, "ZOI Global - Awakening a New Era in the Dietary Supplements                                                Industry," https://www.facebook.com/zoiglobal2020/videos/1166809347159267 [hereinafter, "ZOI Global - Awakening"], at 11:14. Describing meeting the Metron Defendants at the Metron lab, Ms. Stephens states: "the missing vehicle was found, and the drivers of the vehicle were present in the room." ZOI Global - Awakening, at 7:32. The same video refers to the Metron Defendants and Zoi Global's relationship as a "**world class partnership**." Ex. A at 10, ZOI Global - Awakening, at 2:36. Zoi Global's sole contact on the Zoi Global website (zoiglobal.com)'s contact page is Defendant Lori Lee, a citizen of New Jersey.  Dkt. #5, ¶ 19; Ex. A at 3.

Along with being the exclusive contact for Zoi Global, Ms. Lee creates content for the Zoi Global website, is prominently featured on the website, and creates and hosts webinars posted on the website. Dkt. #5, ¶ 18; see, e.g., Ex. A at 1, 3. Ms. Lee resides and conducts business in this District through the Wellness Center of Northwest Jersey ("the Center"), of which Ms. Lee is the "founder & executive director."  Dkt. #5, ¶¶ 9, 19; Ex. A at 7. Ms. Lee's involvement is so extensive that every page on the Zoi Global website features a link in the upper left corner stating: "WELCOME FROM: LORI R. LEE, MA, RDN, CPT, CLT

3

FUNCTIONAL REGISTERED DIETITIAN NUTRITIONIST."  Dkt. #5, ¶ 18; Ex. A at 1–3. The "CONTACT" page on the Zoi Global website features a photograph of Ms. Lee, along with links to Ms. Lee's contact information in New Jersey.  Dkt. #5, ¶ 19; Ex. A at 3.  Ms. Lee and her Center are the only contacts listed on that page. Ex. A at 3. Not only does the Zoi Global website have a New Jersey contact, the website also links to The Wellness Center of Northwest Jersey. Ex. A at 3.

Ms. Lee, Dr. Tsirikos-Karapanos, and Metron are closely associated. For example, Dr. Tsirikos-Karapanos appears, from his Metron office, in Ms. Lee's Wellness Wednesdays video series for her Center. Dkt. #5, ¶ 19; Ex. A at 4-6. Numerous videos on the Center's website and social media feature Dr. Tsirikos-Karapanos and have the Zoi Global brand logo in the upper left corner. *See, e.g.*, Ex. A at 4-5. In the August 26, 2020 Wellness Wednesdays video, in response to Dr. Tsirikos-Karapanos emphasizing that ClearDrops is for daily as opposed to sporadic usage, Ms. Lee replies: "That again is what sets *us* apart from the rest, absolutely." *See* "2020 08 26 Wellness Wednesday Wellcast," http://www.thewellnesscenternwj.com/wellness-wednesday-wellcast-videos at 22:52; Ex. A at 4. Through the Center's website and social media, Ms. Lee directs New Jersey residents and the Center's out of state visitors back to the Zoi Global website to learn about and to distribute/sell Zoi Global's products. Dkt. #5, ¶ 19; Ex. A at 4–7, 12.

Plaintiffs' causes of action arise out of Dr. Tsirikos-Karapanos's statements in videos on the Zoi Global website and social media, which were deliberately placed there at the direction of Dr. Tsirikos-Karapanos. Plaintiffs have alleged, for example, that the "Compare Us" section of the Zoi Global website features a twenty-nine-minute video in which Dr. Tsirikos-Karapanos makes various statements regarding Plaintiff Zeo Health's Zeolite Pure supplements. Dkt. #5, ¶ 40. Among other statements outlined in the Amended Complaint, Dr. Tsirikos-Karapanos tells viewers that Plaintiff Zeo Health's Zeolite Pure product violates the law, that Plaintiff Micah Portney's "past" is a "huge red flag" regarding the safety of Plaintiffs' product, and that he "wouldn't trust to take even a glass of water" from Mr. Portney. Dkt. #5, ¶ 40. The Metron Defendants promoted, and continue to promote, their products through these videos on the Zoi Global and the Wellness Center of Northwest Jersey's websites and social media accounts.

## III.   LEGAL STANDARD

A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by that State's law so long as the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). New Jersey's long-arm statute extends "to the uttermost limits permitted by the United States

5

Constitution." *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 382–83 (D.N.J. 2016). *See* R. 4:4–4(b)(1).

A two-prong test defines the due process limits of the exercise of personal jurisdiction. First, a defendant must have constitutionally sufficient "minimum contacts" with the forum State. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3rd Cir. 1998); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). The court must examine the relationship between the defendant, the forum, and the litigation to determine whether the defendant has "purposefully directed" its activities toward residents in the forum State. *Burger King*, 471 U.S. at 472. Moreover, a defendant must have purposefully availed themselves of the benefits and protections of conducting activities in the forum State. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Second, where a defendant has sufficient minimum contacts, a court must determine whether the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) ("[W]e ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."). Jurisdiction is proper where a defendant has "fair warning"

6

that such minimum contacts will subject it to the jurisdiction of the State, and a defendant can reasonably anticipate being haled into court here. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Personal jurisdiction over a defendant may be established through general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Where a defendant is at home in the jurisdiction and subject to general jurisdiction, it can be sued there on any matter. *Id.* If a defendant is subject to specific jurisdiction, the claims must relate to its activities in the State. *Id.* The Third Circuit has outlined a three-part test to determine whether specific jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. First, a defendant must have "purposefully directed [its] activities at the forum." *Id.* Second, the claims must "arise out of or relate to at least one of those activities." *Id.* Third, the exercise of jurisdiction must not offend fair play and substantial justice. *Id.* The minimum contacts analysis depends upon "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977); *MaxLite,* 193 F. Supp. 3d at 384.

Once a plaintiff demonstrates a *prima facie* case of personal jurisdiction by establishing minimum contacts, the burden shifts to the defendant to establish jurisdiction is not constitutional. *MaxLite, Inc*., 193 F. Supp. at 383; *see O'Connor*, 496 F.3d at 324. A defendant "must present a compelling case that the presence of

some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

## IV.   ARGUMENT

Plaintiffs' Amended Complaint states sufficient facts to establish personal jurisdiction over Defendants. The facts in the Amended Complaint establish this Court can exercise specific personal jurisdiction due to the Metron Defendants' forum-related contacts.   This is because (A) Defendants' comments on the Zoi Global website are sufficiently targeted to New Jersey to satisfy the *Zippo* test as applied by the Third Circuit, and (B) the Amended Complaint alleges sufficient facts to satisfy the *Calder* effects test as set out by the U.S. Supreme Court.

A.   Defendants' comments on the Zoi Global website are sufficiently targeted to New Jersey to satisfy the *Zippo* test.

The Metron Defendants directed their statements on the Zoi Global website to New Jersey since the Metron Defendants had notice regarding Zoi Global's contacts with the State, and Zoi Global's contacts with New Jersey may be imputed to the Metron Defendants under agency theory.

The Third Circuit uses the *Zippo* test to determine minimum contacts in cases involving internet websites. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) ("The opinion in Zippo . . . has become a seminal authority

8

regarding personal jurisdiction based upon the operation of an Internet web site."); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). Under the *Zippo* test, a sliding scale approach to the exercise of personal jurisdiction considers user engagement with a particular website. *Zippo Mfg. Co.*, 318 F.3d at 1124. The test distinguishes between commercial interactive websites through which individuals actively engage in business and passive websites where users simply view information. *Id.* Since users can access websites from anywhere, the exercise of personal jurisdiction is appropriate where a defendant intentionally interacts with the forum State.  *See Toys "R" Us, Inc.*, 318 F.3d at 452. Additionally, "*how* individuals use the web site is equally, if not more, important than the features of the web site itself." *Gorman v. Jacobs*, 597 F. Supp. 2d 541, 550 (E.D. Pa. 2009) (emphasis in original). Non-operator users of a website may be subject to personal jurisdiction where "*something* about the web site must suggest to the user that residents of the forum state are the target audience." *Id.* at 548.

Where two parties are in an agency relationship, a court may impute the agent's minimum contacts to the principal. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002) ("For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal."); *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 910 (N.D. Ill. 2006) (finding the exercise of specific jurisdiction proper based on an intermediary's acts because

9

agents' actions are attributable to the principal for the purposes of establishing jurisdiction); *Holbrook Plastic Pipe Supply, Inc. v. Jackson*, No. 04-CV-03211-ADS-WDW, 2006 WL 8441408, at *8 (E.D.N.Y. Jan. 3, 2006); *Ross v. UKI Ltd.*, No. 02 CIV. 9297, 2004 WL 384885, at *6 (S.D.N.Y. Mar. 1, 2004) (stating a court may exercise jurisdiction over a principal under agency theory if "he knew about, authorized, and exercised some control over the actions of [the agent]"). The question is whether the parties' relationship is sufficient under the Due Process Clause to permit the exercise of jurisdiction. *Daynard*, 290 F.3d at 56–57; *see In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 693 F. Supp. 2d 409, 420 (D. Del. 2010) (finding a "nearer than arm's length relationship" between companies justified agency theory of jurisdiction); *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976) (finding the manufacturer-distributor relationship allowed an unrelated company's contacts to be attributed to defendant where the company's contacts with the State were to promote and distribute defendant's products).

The Metron Defendants were sufficiently on notice that their comments would be specifically directed to New Jersey, and the Metron Defendants used their New Jersey contacts to promote and to distribute their products. *See Gorman*, 597 F. Supp. 2d at 550 (finding a defendant's use of a website may establish that they expressly aimed their comments when some aspect of the website put that defendant

10

"on notice that their comments would be directed specifically into [the forum state].") Plaintiffs have alleged that every page on the Zoi Global website features a link in the upper left corner stating: "WELCOME FROM: LORI R. LEE, MA, RDN, CPT, CLT FUNCTIONAL REGISTERED DIETITIAN NUTRITIONIST." Dkt. #5, ¶ 18; Ex. A at 1–4. The "CONTACT" tab on the Zoi Global website leads to a web page featuring a photograph of Ms. Lee, along with links to Ms. Lee's contact information in New Jersey. Ex. A at 3. Ms. Lee and her Center are the only contacts listed on this page. The web page links to The Wellness Center of Northwest Jersey, of which Ms. Lee is the founder and executive director. Ex. A at 3, 7. Numerous videos on the Center's website and social media feature Dr. Tsirikos-Karapanos and have the Zoi Global brand logo. Ex. A at 4-5. The Center's website directs visitors back to the Zoi Global website and invites visitors to help distribute/sell Zoi Global's products. Ex. A at 12. Through their promotional material, the Metron Defendants encouraged and directed citizens of New Jersey as well as visitors from out of state who visit the Center to view the Metron Defendants' statements on the Zoi Global website.  Unlike in *Gorman*, where "nothing" put users on notice that the website would direct comments posted into the State, the Metron Defendants' dealings with Zoi Global establish intent to interact with New Jersey. *See Gorman*, 597 F. Supp. at 550.

11

Here, the Metron Defendants knew about Zoi Global's close relationship with Ms. Lee, and the Metron Defendants acted on that knowledge by targeting citizens of New Jersey and visitors to the Wellness Center of Northwest Jersey. The Metron Defendants also have their own close relationship with Ms. Lee and to the Center, which establishes intent to directly interact with New Jersey residents and out of state visitors to the Center. The Metron Defendants' acts demonstrate they had more than mere knowledge that their statements might be heard in New Jersey. *Cf. Carpino v. Nat'l Store Fixtures Inc.*, 712 N.Y.S.2d 684, 687 (N.Y. App. Div. 2000). The use of the Zoi Global website as a platform does not change the Metron Defendants' knowledge that their statements would have consequences in New Jersey.

A distributor's contacts may be imputed to a defendant where the defendant reaches into the forum state through the distributor and has "every reason to foresee" his contacts will raise the prospect of litigation. *Holbrook Plastic Pipe Supply*, 2006 WL 8441408, at *8. *Holbrook* is particularly illustrative in the present case. In *Holbrook*, the defendant manufactured Edurazyme, described as "an environmentally friendly product that is capable of stabilizing dirt roads so that they become impervious to water and need little or no maintenance." *Id.* at *1. The defendant manufactured the product through his companies, and neither the companies nor the defendant had any property, offices, plants, or other production

12

facilities in the forum State. *Id.* The defendant allegedly created the product, found the distributor to market the product, and contributed most of the content on the distributor's detailed website." *Id.* at *8. The defendant's exclusive distributor had offices in China and in Canada and advertised and promoted the products on its website. *Id.* at *1. The defendant represented himself as the distributor's "technical expert" for advice purposes. *Id.* at *2.  However, the defendant's technical advice continuously referred to "our" product. *Id.* at *8. The distributor directed the plaintiff to its website to encourage the plaintiff to purchase and to promote the Edurazyme product, and the distributor granted the plaintiff the exclusive right to promote and to sell the product in the United States, including the forum State. *Id.* at *1. The plaintiff dealt with the distributor and purchased 600 gallons of the Edurazyme product, but the plaintiff discovered the product did not work because it was primarily soy sauce and water with "little or no active stabilization ingredients." *Id.* at *2. The defendant had made the false representations about the "bogus product" on the distributor's website and other materials, which led to the plaintiff's purchase and agreement to promote the product. *Id.* The court found there were sufficient facts to show that the defendant knew his product would have consequences in the forum state, and, additionally, the defendant acted on that knowledge to sell additional products in the forum. *Id.* at *6.

Further, the defendant's advice in the forum regarding the product contradicted his contention that he did not know his product would have consequences in the forum. *Id.* The court rejected the defendant's argument that he was not subject to personal jurisdiction because the distributor conducted all the marketing and sale of the product in the forum State since it did not affect the narrower inquiry of whether a defendant expects or should expect that its acts will have consequences in the forum State. *Id.* Through the distributor, the defendant purposefully reached into the forum State to sell his product, and his communications and acts were all intending to avail himself of the privilege of conducting business in the forum State. *Id.* at *8. Attributing the distributor's actions to the defendant, the court found the exercise of personal jurisdiction proper. *Id.* at *6.

Like the defendants in *Holbrook*, Zoi Global's contacts with New Jersey can be imputed to the Metron Defendants because the Metron Defendants authorized Zoi Global to create and distribute content regarding the Metron Defendants' products. The Metron Defendants knew their statements would cause harm in New Jersey due to Zoi Global's contacts with the state, and they acted on that knowledge by further directing New Jersey residents and visitors to the Wellness Center of New Jersey to view the videos on the Zoi Global website. With references to shared patents and products, the Metron Defendants use Zoi Global as a vehicle to interact with

14

customers and/or potential customers in this District through their exclusive distribution agreement and the content on the Zoi Global website. Dr. Tsirikos-Karapanos created the promotional videos giving rise to these causes of action for the Zoi Global website. Zoi Global is the Metron Defendants' exclusive distributor, and the Zoi Global website refers to Dr. Tsirikos-Karapanos's three U.S. patents as "Our Patents," indicating a relationship of ownership and control. Dkt. #5, ¶ 13; Ex. A at 11. Zoi Global only distributes the Metron Defendants' products and no other company's products. Dr. Tsirikos-Karapanos went beyond merely authorizing Zoi Global to create and to distribute content when he asked Ms. Stephens to form Zoi Global as a multi-level marketing company. Dr. Tsirikos-Karapanos directed Ms. Stephens to form Zoi Global to do business on behalf of the Metron Defendants. Ex. A, at 10, ZOI Global - Awakening, at 4:49. In Ms. Stephens's own words, when she met the Metron Defendants at the Metron lab, "the missing vehicle was found, and the drivers of the vehicle were present in the room." ZOI Global - Awakening, at 7:32.

The Zoi Global website also refers to Dr. Tsirikos-Karapanos as "Our Inventor," and Dr. Tsirikos-Karapanos is the featured spokesperson in numerous Zoi Global videos. Ex. A at 11. Zoi Global distributes and promotes the Metron Defendants' products through online content with the Metron Defendants' knowledge and consent and for the Metron Defendants' benefit. The Metron

Defendants accept the financial benefits of the promotion and distribution of their products by Zoi Global, and through Zoi Global, the Metron Defendants purposefully reached into New Jersey to promote their products. By using primarily, if not only, New Jersey contacts to promote and to sell their products, the Metron Defendants intended to avail themselves of the privilege of conducting business in the state. This Court should impute Zoi Global's contacts to the Metron Defendants for the exercise of personal jurisdiction because the parties hold themselves out to be part of a joint venture or other agency relationship. For example, on its Facebook page, Zoi Global states: "[o]ne of the biggest things that makes Zoi Global different is we have an exclusive partnership with a true, qualified dietary supplement formulator."



ZOI Global - Awakening, at 2:28.

Through their "**world class partnership**" The Metron Defendants have sufficient ties to New Jersey to make the exercise of personal jurisdiction proper. Describing their partnership, Zoi Global further states: "Metron Nutraceuticals has taken tremendous efforts to protect this breakthrough technology so that Zoi Global can make it available to people like you and place it in your hands to impact your life and the lives of others." *Id.* at 3:13. Since the parties purport to have a joint venture, partnership, or agency-like relationship, potential customers and visitors to Zoi Global's website or social media pages can reasonably rely on the understanding that Zoi Global and the Metron Defendants have an exclusive partnership. The Metron Defendants could have clarified their relationship with Zoi Global. Dr. Tsirikos-Karapanos appears in numerous videos on the Zoi Global website, and he made the statements giving rise to this litigation while promoting the Metron Defendants' product on the Zoi Global website. Ms. Lee further directs potential customers in New Jersey to the Zoi Global website through the Wellness Center of Northwest Jersey to find out "what sets *us* apart from the rest."

Plaintiffs satisfy the second prong of the Third Circuit's *O'Connor* test because all seven causes of action in this case arise out of the Metron Defendants' statements on the Zoi Global website: (1) False Advertising under the Lanham Act, (2) defamation of Zeo Health, (3) defamation of Micah Portney, (4) defamation of

17

Touchstone, (5) defamation of Eddie Stone, (6) product disparagement, and (7) unfair competition. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

Finally, the Metron Defendants' contacts with New Jersey make jurisdiction presumptively constitutional. *Id.* at 324; *see Burger King*, 471 U.S. at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."). Fairness requires the exercise of personal jurisdiction to prevent the Metron Defendants from circumventing jurisdiction by hiding behind intermediaries and platforms. Zoi Global only distributes and promotes the Metron Defendants' products and no other company's products while emphasizing the strong partnership between manufacturer and exclusive distributor. The Metron Defendants use the Zoi Global and Wellness Center of Northwest Jersey websites and social media as their own platform to promote their products and to make statements about the competition. In the Center's promotional videos featuring Dr. Tsirikos-Karapanos, Ms. Lee refers collectively to "what sets *us* apart from" other companies. "2020 08 26 Wellness Wednesday Wellcast," http://www.thewellnesscenternwj.com/wellness-wednesdaywellcast-videos, at 22:52; Ex. A at 4. The Metron Defendants do not appear to use any other vehicles to promote or to sell their zeolite products. Dr.

18

Tsirikos-Karapanos was the driving force behind creating Zoi Global as a multi-level marketing company. Ex. A, at 10; ZOI Global - Awakening, at 7:33. One can even infer that the purpose of Zoi Global is to insulate the Metron Defendants from liability. Moreover, the Metron Defendants have failed to put forward any reason why the exercise of personal jurisdiction would not comport with traditional notions of fair play and substantial justice, so the Metron Defendants have not met their burden.

The Metron Defendants are so intertwined with Zoi Global as to impute Zoi Global's contacts to the Metron Defendants under an agency theory. As a result, the Metron Defendants' defamatory statements about Plaintiffs on the Zoi Global website targeted customers and/or potential customers in this District, and the Metron Defendants had notice their statements would be directed to New Jersey.

B. This Court may exercise personal jurisdiction over the Metron Defendants because the Amended Complaint alleges sufficient facts to satisfy the U.S. Supreme Court's *Calder* effects test.

Additionally, personal jurisdiction over the Metron Defendants in New Jersey is proper because the focal point of the alleged harm occurred in New Jersey, and the Metron Defendants had knowledge that such harm would target the forum State due to Zoi Global and the Metron Defendants' association with Defendant Lori Lee and the Wellness Center of Northwest Jersey.

19

In *Calder v. Jones*, the Supreme Court held that when a defendant directs an intentional tort against a plaintiff, that tort's impact on the plaintiff in the forum state "may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus.*, 155 F.3d at 260; *see Calder v. Jones*, 465 U.S. 783, 789 (1984). In *IMO Industries*, the court held that the *Calder* effects test requires a plaintiff to show that:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

155 F.3d at 265–66.

The *Calder* effects test does not require a comparative analysis. *MaxLite*, 193 F. Supp. 3d at 389; *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772 (1984) (finding the distribution of thousands of magazines constituted sufficient contacts for personal jurisdiction without comparing how many copies were distributed nationally).

For the third prong of the test, an action "with the knowledge or intention of causing harm" within a State satisfies the requirement of purposeful availment for minimum contacts. *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 786, 794 (N.J. App. Div. 2006).

24

Here, Plaintiffs have alleged the Metron Defendants engaged in false and misleading advertising under the Lanham Act § 43(a) (15 U.S.C. § 1125(a)) as well as defamation, product disparagement, and unfair competition in violation of New Jersey law. Dkt. #5, ¶ 12. The Metron Defendants do not contest that these claims fall within the category of intentional torts. Plaintiffs satisfy the first prong of the *Calder* effects test.

Where the sole contact for the website on which The Metron Defendants made defamatory statements regarding Plaintiffs' product is based in New Jersey and directs citizens of New Jersey back to that website, the focal point of Plaintiffs' harm can be said to be in New Jersey. The Metron Defendants interact with visitors to the Zoi Global website through their online content. As noted above, Zoi Global's contact information directs visitors to Ms. Lee and to the Wellness Center of Northwest Jersey. Dkt. #5, ¶ 19; Ex. A at 3–5. Likewise, Ms. Lee and the Wellness Center of Northwest Jersey direct New Jersey residents and out of state visitors to the Center to the content on the Zoi Global website. Ex. A at 4–6. Ms. Lee invites visitors to the Center's website to help distribute, purchase, and use the Metron Defendants' products. Ex. A at 12.

While anyone can access the Metron Defendants' statements on the Zoi Global website, the *Calder* effects test does not require a comparative analysis for

the second prong. *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 389 (D.N.J. 2016). A New Jersey resident contact who solicits other citizens in the State to participate in distribution and to view promotional material goes beyond a "random, isolated, or fortuitous" contact with the State. *See Keeton*, 465 U.S. at 774 (finding the sale of thousands of magazines in the State established sufficient contacts to subject defendant to personal jurisdiction); *see also Zippo Mfg.*, 952 F. Supp. at 1127 (finding contracts with around 2% of all defendant's subscribers established sufficient minimum contacts with the State). Zoi Global and the Metron Defendants' ties to Ms. Lee and to The Wellness Center of Northwest Jersey have been outlined above. Ms. Lee increases sales of the Metron Defendants' products in New Jersey as well as increasing the number of visitors who see the Metron Defendants' statements on the Zoi Global website. The increased traffic to the Zoi Global website from citizens of New Jersey and out of state visitors to the Center makes New Jersey the focal point of Plaintiffs' harm. Plaintiffs satisfy the second prong of the test.

Knowing Zoi Global's contacts with New Jersey and through their own contacts with the state, the Metron Defendants expressly aimed their tortious conduct at New Jersey, satisfying the third prong of the *Calder* effects test. In making the statements on the Zoi Global website giving rise to the causes of action, the Metron Defendants acted "with the knowledge or intention of causing harm" in New Jersey due to their dealings with Zoi Global and the Wellness Center of Northwest Jersey.

22

*See State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 786, 794 (N.J. App. Div. 2006).

Since all prongs of the *Calder* effects test are satisfied, this Court may properly exercise personal jurisdiction over the Metron Defendants.

## V.     CONCLUSION

Plaintiffs have satisfied their burden of proof regarding personal jurisdiction over the Metron Defendants with the allegations in the Amended Complaint. Dr. Tsirikos-Karapanos and Metron are so intertwined with Zoi Global as to make it reasonably foreseeable that they would be haled into court in New Jersey. The Metron Defendants directed their statements on the Zoi Global website to New Jersey since the Metron Defendants had notice regarding Zoi Global's contacts with the State, and Zoi Global's contacts with New Jersey may be imputed to the Metron Defendants under agency theory. From a policy standpoint, fairness requires the exercise of personal jurisdiction to prevent the Metron Defendants from circumventing jurisdiction by hiding behind intermediaries. Personal jurisdiction over the Metron Defendants in New Jersey is also proper under the *Calder* effects test because the focal point of the alleged harm occurred in New Jersey, and the Metron Defendants had knowledge that such harm would target the forum State due

to Zoi Global's association with Defendant Lori Lee and the Wellness Center of Northwest Jersey.

Accordingly, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss.

Dated: September 20, 2021            Respectfully submitted,

                                     s/ Dariush Keyhani
                                     Dariush Keyhani
                                     Keyhani LLC
                                     1050 30th Street NW
                                     Washington, DC 20007
                                     Telephone: (202) 748-8950
                                     Fax: (202) 318-8958
                                     dkeyhani@keyhanillc.com
                                     *Attorneys for Plaintiff*

24